Today, number 171507, Victor Ramos-Santiago et al. v. WHM Carib LLC. Good morning, Your Honor. Good morning. I'm Miguel Soro Carrasco, representing Appellant's Plaintiffs Victor Ramos and his family. I'd like to start by requesting that I be allowed to reserve three minutes for rebuttal. Your way. This is a case where the extensive and detailed record simply did not support the District Court's grant of summary judgment for the defendants. Victor Ramos, who was 60 years old in August of 2013, had been working for the Whimham Hotel chain and the Puerto Rico resort community known as WMR for over 25 years with a perfect disciplinary record and good evaluations. For many years, he also had a side job with the PGA and worked as a golf tournament coordinator for both employers. In August of 2013, the Puerto Rico Engineers Association decided to hold a golf tournament at Riomar and gave Ramos a $3,000 check that was supposed to be split into two parts. $2,700 for prize money to be paid to the pros playing in the tournament and $300 for Ramos for his services as a PGA tournament coordinator. Ramos did not tell anyone he would be taking the $300 fee, but the facts on record show that he did not have to since that was his standard fee and the same amount that the association had paid him the year before for coordinating the 2012 tournament. He was, as the record shows, implicitly authorized to take it. In August of 2013, Whimham fired him for, in its telling, not informing Whimham he would take the check and fee. Is there any record that Whimham was aware that he was taking the $300 fee in other years? Other years? Well, there is a record that Whimham was aware that he held both jobs at the same time. It's in a request for admission where Whimham was asked to admit that it knew that Ramos worked for the PGA and Whimham at the same time and the response was admitted. So they knew that he worked both jobs and they knew that his standard fee was somewhere between $250 to $300 per tournament. So, in August of 2013... How is that shown in the record? Excuse me? What you just stated, how does that appear in the record? It's in a request for admission, Your Honor. And it's also in Victor Ramos' affidavit and I believe in Willenberg's deposition. Willenberg used to be the treasurer for the PGA and he was involved in the payments. So in August of 2013, Whimham fired him for, in Whimham's telling, not informing Whimham that he would take the check and fee. Ramos and his family posit that such justification was a cover for age discrimination. The controlling law in this diversity case is Puerto Rico Employment Discrimination Law. Under its standards, Ramos had to show that he was unjustly fired and that, as applicable here, he was 60 years old. At that point, a presumption of discrimination would arise and it would be up to Whimham to show, by preponderance of the evidence, that age discrimination was not a motivating factor in the termination. Ramos did show that, but the district court erred in not accepting the supporting facts on record. To start, it refused to accept that the reason Whimham gave for termination was Ramos not telling it about the check and fee. The court held that Ramos could be found to have been fired for actually taking the fee, meaning embezzlement or theft. However, it refused to accept unobjected corporate deposition testimony where Whimham confirmed outright that its only justification was Ramos' omission in not telling it about the check and fee. Can I ask you about that? Why wouldn't it be... I just don't follow the distinction you're drawing between those two things and why you think it matters so much. Couldn't we just read the district court to be saying that since you didn't tell about the fee, we assume you took it? And that's why we're firing you. In other words, it just seems odd to read the record to suggest that we knew you weren't taking it, but simply because you didn't tell us, that's why we fired you. Unless you think the record just shows that clearly. Well, the record shows that the only reason they gave for the termination was not telling the hotel about the check and fee, not actually taking it. Does the record show he didn't take it? He did take it. Yeah. Right. So I guess I just don't understand. The reason... since he took it and didn't tell... The $300? I mean, he took the check, distributed $2,700, and $300 took it as his fee. No, but I'm saying it's not as if the employer is saying, the only thing that bothers me is that you didn't tell. Yes, Your Honor. No, because he also took it. That would add to one's suspicion. In other words, if I took it, but then told you up front, here's why I'm taking it, what's going on, maybe that would have allayed our suspicion. But when you take it and don't tell me what you're doing, I'm worried about embezzlement. Well, he was never accused of embezzlement, and it's an uncontested fact that he was acting in good faith at all times. So good faith is incompatible with something criminal as embezzlement. He was never asked to return the money. Windham never apologized to the client. This was just his standard fee that he took for these kinds of tournaments and that he took for the same client the prior year. I would like to know which request for admission is it that you say they admitted that he received $250 to $300 for his work? It was $20 something. I don't have the exact number. Well, I have a $26 here that says Mr. Ramos had received third party money in the past, for instance, before the incident resulted in his termination, while working for you. Is that the one? No, it's one that says at the time of Mr. Ramos' termination, you knew that he worked for both Windham and the Colegio, I believe is the word that is used, at the same time, and then it says admitted. And I believe it's in the 20s. 23? At the time of Mr. Ramos' termination, you knew he had worked for PGA at the time that he worked for you? Yes, Your Honor. All it says is admitted. Correct. But yes, they knew that he worked for both entities at the same time. They knew that he was paid for it. They never asked him to report on this job or on his income. Well, I just wanted to be more specific. It was possible that they knew that he was getting paid $300 or whatever. They knew that he was getting paid around that amount. Well, it doesn't say so here. There may be some other ones. Well, Your Honor, even if they didn't know the amount, he had never been required to report on this job. He was allowed to do it without any kind of interference from his parents that he didn't have to inform at this time either, as he never had, and there had never been any problem with that. The issue, as I see it, is receiving a check in his name covering all the performances that he deposited in his own name and deducting whatever he thought he was entitled to. Why was his employer required to accept that as an appropriate way of proceeding? Well, because even when you look at the initial, when his employer first found out, there's some emails between the director of Country Club, Jeff Willenberg, and the controller, Hector Aponte, and one of the first things that Willenberg actually says is, this was supposed to be delivered to Victor to handle, not accounting. And then only because Aponte pushes him a little further does he ask Victor what happened and then when Victor shows him the money breakdown and all of that takes place. But he wasn't even surprised that this was happening. This was standard practice. What was the standard practice? It was for Ramos to work, at the same time as he worked for Windham, he worked for the PGA. That means he coordinated golf tournaments all over the island and for each tournament he got paid around $250 to $300. But what about, but the check was for $3,000. Correct. And the check was in his name. Yes. So was it standard practice for him to put himself as the person to whom monies he had no right to would be paid? Yes, because as one of the emails from Willenberg says, it says his fee paid to himself had been done previously. The fee paid to himself. But the check was for more than the fee to himself. Yes, because Ramos explained that the prior year how the distribution had been done at a different golf course was that the athletic club in charge of the golf course had distributed the money. But just for purpose of age discrimination, what I'm not tracking is the defendant gives its reason for terminating. Yes. Okay. On its face it has nothing to do with age. Correct. Okay. For you to win, you have to somehow show that that reason doesn't hold up. They have to prove the reason by a preponderance of the evidence on their Puerto Rico standards. Yes. And so they've put forward all these emails and everything saying here's why we did it. Right. But their reasoning doesn't hold up because he didn't have to report this because this was standard practice because the evidence gives way to a reasonable jury inference that this was standard practice. And what's the standard practice? That's what I'm trying to figure out. What is in the record that shows they knew that it was standard practice to put yourself as the recipient of the check for monies not owed to you? Well, the admission that they knew that he worked for both entities at the same time. The fact that he was never required during all the years he did that to report on the money that he said in his sworn statement. Is there any evidence that they knew in the past he had been paid not only his fee for the PGA, but more money than that was written to him as the check? Well, when Willenberg says his fee paid to himself had been done previously. But I'm not following that. That's just the $300? Correct. So what's in the record suggesting that it's okay for a check for more than $300 to be written to you personally? Well, when Willenberg stated before talking about his fee, when Willenberg said this was supposed to be delivered to Victor to handle, not accounting, this was Victor's deal, so to speak. And he worked for both entities at the same time. There had never been a problem with it. In fact, it benefited Willenberg. He was just following his standard practice. The record will show that in the past, checks were written for much more than his fee to him? The record shows that he had paid himself his fee from Robert. Just answer my question, though. Okay. So the record showed in the past that there were checks of an amount greater than his fee paid to him? Actual checks, no. So why isn't that a problem for you? Because the defendant's representation is you got a check for more than just your fee and didn't tell us about it. And then you're saying, but there's no standard practice that the employer knew that was done in the past. Because there was nothing wrong with that. I'm not sure I follow. Okay. Maybe I'm not. Okay. I can't myself. Thank you. Thank you, Your Honor. Your Honor, may I please support? Shiradi Roneo on behalf of Avalese. Counselor has mentioned on several occasions now something about a standard practice. The fact of the matter is there is no such evidence of Wyndham knowing that there was any standard practice. In fact, he just mentioned the year before this tournament was held at a different resort. And Mr. Ramos, on behalf of the PGA, had coordinated that tournament. In that tournament, the check, the cash prize for the golf players, was actually made to the order of the association. And part of the reason that Mr. Ramos said that it was handled differently in the tournament that was held at Wyndham was because that other time they had taken more time to change that check and distribute the prizes. So clearly the practice that was actually used in the tournament that actually led to his termination was not standard practice. It was different than what had happened the year before. And there is certainly no evidence on the record that Wyndham had any knowledge that Mr. Ramos had coordinated that other tournament or had received any fees or had received any checks. This will help me. Once the employer comes back with the reason for why it's terminating, the fact that that reason may not be a great reason for terminating someone doesn't matter. All that matters is that they have to show it's not the real reason. Am I right about that? That is correct. And so the reason the standard practice matters is that if there was a standard practice of this being okay, that might provide a basis for thinking it's not the real reason. But since there is no standard practice, you say we have no reason to doubt that the real reason for terminating him was the reason they gave, which was just this. That is correct. And then the fact that it might not be a sufficient reason to fire someone doesn't mean it's age discrimination. Correct. So it doesn't really matter that it may not be a particularly good reason for firing him. That is precisely why the district court in this case denied both parties' motion for summary judgment with respect to the unjust dismissal case. The district court noted that in this case most facts were undisputed. Yes, it is true that Mr. Ramos was a long-tenure employee. It is true that he had two jobs. And I want to clarify one thing. Yes, it is true that there is a request for admissions where Wyndham admitted that he had two jobs at the same time. But that is different to Wyndham knowing that he was going to be performing the duties for both positions at the same time. Now, putting aside the standard practice point, is there anything in the record that suggests standard practice with respect to him, the plaintiff? Is there any record, any evidence in the record suggesting that other employees who engaged in similar conduct as him were treated more leniently than him? No, Your Honor. In their brief they actually claim that Mr. Willenberg was treated more leniently than him for doing more or less the same thing. And that is simply not supported by the record. Mr. Jeff Willenberg was a director of golf and was also a professional golf player. He actually played in the tournament on his day off. And because of his participation in the tournament, he, along with all the other professional golfers, were paid a $150 fee. And what Ramos is claiming is Mr. Willenberg received the payment and he was not terminated and he was not reprimanded. The problem is that they are not similarly situated. First of all, they held different positions. Mr. Ramos is not a professional golf player. Mr. Ramos did not play in the tournament. And in fact, Mr. Ramos was working as a Wyndham employee the day of the tournament. So just to wrap this line of thought up, your position is there's no evidence that Ramos in this instance was being treated any differently than he had been in the past? And there's no evidence in the record that any similarly situated person to Ramos was being treated differently than him? Correct, Your Honor. And in consequence of that, the age discrimination claim can't succeed because there's just no evidence of that would undermine the reason that Wyndham gives as to why he was fired. That is correct. And that reason itself is not age discrimination. That is correct, Your Honor. Under Puerto Rico's Act 100 burden shifting framework, once, and in this case in particular, what the district court said is, even though we are going to deny the motion for summary judgment with respect to the unjust dismissal claim, for purposes of the Act 100 claim, I'm going to assume that he was successful in establishing the wrongful termination and accordingly that he was able to trigger the inference of discrimination. At that point, Wyndham actually proves by preponderance of the evidence that he had a non-discriminatory reason for that termination, which it did. It did an investigation. It concluded that Mr. Ramos had actually taken a check to his name for $3,000 without, and then actually took $300 of that as a fee to himself without authorization from the client and without telling anybody. And so, obviously, that is the non-discriminatory reason. Plaintiff has an obligation to actually provide evidence of what this age discrimination was supposed to be, and he has utterly failed to do so. But he can do that by suggesting that the reason you gave is not the real reason. And that would be through evidence of similarly situated people doing the exact same thing and not being disciplined, or a knowledge of a standard practice that Ramos had done the exact same thing in the past and they didn't care about it. That is correct. But he doesn't have either, according to you. And that is correct. There is no evidence on the record that Wyndham at any moment knew that he had taken any money before. Certainly, the tournament the year before had not been at Wyndham, so there was no way for the company to actually know that. And just so that the record is very clear, even though, yes, that request for admissions, Wyndham admitted that they knew that he had that other job. Clearly, in the written responses to written discovery, the company specifically said that it had no idea what the extent of his relationship with the PGA was, that the company had no idea how he was compensated. So obviously, the evidence on the record is contrary to what plaintiff is alleging. The only other thing, Your Honor, is in this case, they are claiming that, and I'm quoting them, they say they're real discriminators in this case. They mention individual defendants, Danny Williams, which was the general manager of the hotel, Kelly Josephs, which was the regional HR manager based in New Jersey, and they say probably Joanna Vargas, which is an HR manager in Puerto Rico. They say those three persons were the real discriminators. After admitting that the investigation that the company conducted was not a ruse, they say, well, the problem is that these three persons took a bona fide ongoing investigation in order to cover the termination of an older employee. The problem is that there is simply no evidence of discriminatory animus from Williams, from Joseph, or from Vargas. In fact, Mr. Ramos actually testified that he had no problem with anybody at the hotel, that he didn't think that those three persons harbored any ill will towards him. He actually said that he did not know Ms. Joseph. He had never met her. Ms. Joseph testified in her deposition that she had no idea who Ramos was. She had no idea what his age was. She didn't review his personal file before she actually supported the termination decision. So there is absolutely no evidence that any of these three persons, and particularly Mr. Williams, who was the ultimate decision maker, had any discriminatory animus against him. And that's the main problem in this case. After Wyndham was able to establish that non-discriminatory reason for his termination, there has been no evidence that the real reason for that dismissal was actually age discrimination. Appellants also mentioned that he was substituted by younger employees. And while that may be relevant in other type of cases, for example, cases where the reason for the non-discriminatory reason for the dismissal is the elimination of the position, there it would be relevant that he was substituted by younger employees. But in this case, he was not terminated because of that. So the fact that indeed his duties were distributed among other employees, his existing employees, mind you, it makes absolutely not more probable that he was discriminated on account of his age. And finally, the other reason that they actually mentioned is what was discussed before, whether or not he was terminated for not telling or for actually taking the money. The fact of the matter is that he had the client prepare that check to his name, that he went to the bank, that he changed it, that he took the $300, and that it was basically by sheer luck that somebody, the controller of the company, learned and actually noticed that was suspicious. Normally you don't have an employee receiving a check for $3,000 from a client. And that's why the investigation ensued. It was not because nobody had any discriminatory animus against him. It clearly happened just because they had noted that that check was made to his name, and that's when they started asking questions. And that's when he said, yeah, I actually took this money, because it is my position that I coordinated that tournament in my role as PGA contractor or employee and not in my role of tournament coordinator for the hotel. So that's basically what happened. I'm not sure if you have any questions. No questions. Thank you. Thank you. Well, I just want to speak a little bit about the actual investigation. The only reason that they even, Wynnham even found out about this check is because he He did this in complete good faith. There was no intent to embezzle any money or anything of that nature. The investigation. Let me ask you something. Would it be inappropriate if the company fired him just because he followed a procedure, which is not a normal standard procedure? Would it be inappropriate if the company fired him because he followed, he did something that's not a normal, appropriate procedure? It would depend on what he did, because Cash me a check or have me a check made out to his name for fire of the fee not belonging to him. If it hadn't been wrong, I mean, if it hadn't been past practice and somehow been wrong, then they had to, according to the employee manual, consider all of the circumstances that were around the issue and consider progressive discipline. So depending on the outcome of that analysis, then it may or may not be appropriate to fire him. I still don't know. Is there evidence in the record that he received checks before made out to his name for areas or services that weren't performed by him? There are no actual checks. There's the statements from the position statements and e-mails that his fee paid to himself had been done previously, that this was supposed to be delivered to him, not to accounting. So there is evidence. So as to the investigation, after the controller raises the issue, he asks Director of Country Club Willenberg to investigate. He investigates, asks Ramos what's going on. Ramos gives him the money breakdown, which shows his fee. Willenberg calls the association. The association says, we didn't know about the fee, but they don't complain about it. They don't ask for the money to be returned, nothing of that nature. And then Willenberg says, Ramos says, I think in good faith, I truly believe that he was doing the right thing, and we should give him a warning and uphold the suspension for not telling Windham about the check and fee, which we don't believe anything was wrong with that. And then suddenly Vargas begins this push for termination, which he couldn't give any sort of reasonable explanation for that in the position. So that's why we say that the discriminatory intent came at that point and not before. Can I just say honestly about the argument, which is you would seem to be suggesting that any argument that an employer gives that's not a sufficient argument to justify a firing under Puerto Rico law is necessarily a pretextual argument. No, Your Honor. So why are you not saying, because you just keep emphasizing how they didn't have a good reason, how the reason they gave is not a good enough reason to fire him. And I just don't see how that shows pretext. It just shows, okay, they fired him for a bad reason. That doesn't make it age discrimination. Then you could sue him for violation of Puerto Rico law independent of the age discrimination claim. But you need to show that it's not the reason. Correct, Your Honor. A bad reason is not a discriminatory reason necessarily. But there has to be a reason, even if it's a bad reason. But they gave the reason. You acknowledge they gave the reason. You have to say that the reason they gave is not the reason. But the reason they gave was his not telling Wynham about the check and fee. But then we have a lot of evidence that this was past practice and that he didn't have to tell him about the check and fee because he had never reported on that second job to Wynham and they had never asked him to. So that's enough for a jury to infer that he didn't need to do this and therefore their reason is just nonsense. It's not even a bad reason. It's no reason at all. So it doesn't defeat the presumption of discrimination. Thank you, Your Honor. Thank you.